## BESSIE McCOY v. WALTER BRADBURY, Appellant.

### Division One, December 19, 1921.

1. **WILL: Construction: Doubt and Uncertainty: Omission: Extrinsic Evidence.** When any doubt or uncertainty arises as to the testator's intention, extraneous facts are admissible to explain the language used, regardless of the nature of the ambiguity, whether it be patent or latent; in every case the court is entitled to be placed in possession of all available information of the circumstances of the estate and family of the testator when he made his will, to the end that the court may be in his situation as nearly as may be, and may interpret and understand the will as testator would were he living. But such extrinsic evidence is admissible solely for the purpose of ascertaining the testator's intention from the language he used; it cannot be heard to show that he meant one thing when he said another, or to show an intention not expressed in the will, nor to aid in making a will which he intended to make but did not in fact make; it cannot be heard to supply an omission; where the testator in plain language gave a specific legacy to each of six daughters, extrinsic evidence cannot be heard to include a seventh daughter not named, for such omission is not an ambiguity.

2. ————: **Bequest to Six Daughters: Failure to Mention Seventh: Necessarily Implied: Extrinsic Evidence.** The testator, being the father of one son and seven daughters, gave his home place of two hundred and forty acres to his wife for life "and after my death said land to go to my son as hereinafter provided;" by the third clause, he gave six hundred dollars to each of five daughters and seven hundred to another, naming them, but failed to name plaintiff; and in the fourth clause he provided that upon the death of his wife the son "is to pay as an additional legacy to each of my daughters above named or their heirs the sum of four hundred dollars" and that "when he shall have paid the several legacies herein charged against the home farm and after the termination of my wife's death, he is to become the absolute owner of said farm, it being the intention of this will that there shall be charged against

said real estate the sum of seven thousand and one hundred dollars, which is to be paid to said daughters as hereinbefore set out, one thousand dollars to each of them except'' the one to whom seven hundred had been previously given ''who is to receive eleven hundred dollars.'' *Held*, that the will did not by implication provide a bequest of one thousand dollars to the unnamed daughter, the plaintiff; that it omitted to name or make a provision for her; that the testimony of the scrivener that testator ''wanted to make a charge against the land to take care of his daughters'' was not competent to supply the 'omission; that the use of $7100 in the calculation instead of $6100—the aggregate amount of the bequests—did not create an ambiguity, but was a mere inaccuracy; and that testator died intestate as to said daughter, and the wife being dead, she is entitled to a one-eighth interest in the land.

3. ———: **Gift by Implication.** A bequest by implication will not be inferred from mere silence, or from extrinsic facts; it must be founded on expressions in the will itself. From a recital that it is ''the intention of this will that there shall' be charged against said real estate the sum of $7100, which is to be paid to my said daughters as hereinbefore set out, one thousand to each of them except Birdie Leaming who is to receive the sum of eleven hundred,'' only six daughters having previously been named, a bequest of one thousand dollars to an unnamed daughter cannot be implied, although the specific bequests aggregate only $6100; to imply from such recital an intention to bequeath one thousand dollars to the unnamed daughter would be pure conjecture. A testamentary intention not found in the will cannot be incorporated therein by extrinsic evidence and then an implication be based on such extrinsic evidence.

Appeal from Jasper Circuit Court.—*Hon. J. D. Perkins,* Judge.

Affirmed.

*McReynolds & McReynolds* and *John H. Flanigan* for appellant.

(1)   The court should have admitted the testimony of the witness Allen McReynolds, because where there is a patent ambiguity on the face of a will as in this case, parol evidence is competent to explain it. Willard v. Darrah, 168 Mo. 660; Creasy v. Alverson, 43 Mo. 13; Riggs v. Myers, 20 Mo. 239; McMahon v. Hubbard, 217

Mo. 624, 118 S. W. 481; Griffith v. Witten, 252 Mo. 627; 161 S. W. 709; Gordon v. Burns, 141 Mo. 602; Mudd v. Cunningham, 181 S. W. 386; 40 Cyc. 1436. (2) The court erred in holding that J. N. Bradbury died intestate as to plaintiff, because it appears from the whole will that the plaintiff was remembered and impliedly provided for. R. S. 1909, sec. 544, R. S. 1919, sec. 555; 40 Cyc. 1407-1409; Cox v. Jones, 229 Mo. 53, 129 S. W. 495; Robards v. Brown, 167 Mo. 447; 40 Cyc. 1409, 1410, 1413, 1415; Willard v. Darrah, 168 Mo. 660; Mudd v. Cunningham, 181 S. W. 386; Griffith v. Witten, 252 Mo. 627, 161 S. W. 709; Guitar v. Gordon, 17 Mo. 408; Bradley v. Bradley, 24 Mo. 311; Beck v. Metz, 25 Mo. 70; Hockensmith v. Slusher, 26 Mo. 237; McCourtney v. Mathes, 47 Mo. 533; Pounds v. Dale, 48 Mo. 270; Wetherell v. Harris, 51 Mo. 65; Thomas v. Black, 113 Mo. 67; Wood v. Drake, 135 Mo. 393; Fugitt v. Allen, 119 Mo. App. 183; Myers v. Watson, 234 Mo. 286. (a) On the theory of implied bequest the will should stand as to the plaintiff. 40 Cyc. 1391, note 6; Smith v. Smith, 77 Atl. 975, 31 L. R. A. (N. S.) 922; Porter v. Trust Co., 108 N. E. 117; Calloway v. Calloway, 188 S. W. (Ky.) 410. (b) The testator by clause fourth having himself interpreted the will, the court should follow that interpretation and sustain the will. Small v. Field, 102 Mo. 129; Reinders v. Koppleman, 94 Mo. 343; Re McVeigh's Estate, 181 Mo. App. 566, 164 S. W. 673. (3) The findings and judgment upon the whole record are for the wrong party, and the court should have sustained the will because the legal presumption is against intestacy, and under the general rules of law governing interpretation of wills this will sufficiently provides for the plaintiff. Parker v. Tootal, 11 H. L. Cases, 143; Riverside Trust Co. v. Rogers, 96 Atl. 181; 40 Cyc. 1407, 1409, 1410; Willard v. Darrah, 168 Mo. 660; Mudd v. Cunningham, 181 S. W. 386; Griffith v. Witten, 252 Mo. 627, 161 S. W. 709; Cox v. Jones, 229 Mo. 53, 129 S. W. 495; Robards v. Brown, 167 Mo. 447; 40 Cyc. 1413-1415.

*Howard Gray* for respondent.

(1) No error was committed by the trial court in its rulings on the admission of the testimony of Allen McReynolds. The objection was not to the effect that Mr. McReynolds could not testify at all in the case, but was limited to the testator's declarations as to whom he wanted to have his property and who his children were. The testimony was not admissible. Bradley v. Bradley, 24 Mo. 312; Gregory v. Cowgill, 19 Mo. 415; Thomas v. Black, 113 Mo. 68; Riggs v. Myers, 20 Mo. 243; Romine v. Haag, 178 S. W. 147; McMahon v. Hubbard, 217 Mo. 640; Snyder v. Toley, 179 Mo. App. 376. (2) Appellant's point as to the admission of this testimony is plainly stated, as follows: "Where there is a patent ambiguity on the face of a will as in this case, parol evidence is competent to explain it." We deny that this is the law. While appellant has cited a long list of cases in support of his point, we deny that they sustain him. Such testimony is admissible only in cases of latent ambiguity. None of the cases cited sustain the point, but all of them announce the doctrine that declarations of the testator are not admissible to explain a patent ambiguity. (3) There is no ambiguity of any kind in the will. There may be an inaccurate statement as to the amount of money necessary to meet the specific legacies, but this is not an ambiguity. Riggs v. Myers, 20 Mo. 239. (4) The respondent is not named in the will of her father and neither is she provided for therein, and therefore as to her he died intestate. Thomas v. Black, 113 Mo. 68; Williamson v. Roberts, 187 S. W. 19; Pounds v. Dale, 48 Mo. 270; Hargadine v. Pulte, 27 Mo. 423; Wetherell v. Harris, 51 Mo. 65; Myers v. Watson, 234 Mo. 286; Lewis v. Reed, 182 S. W. 638. It is conceded that the respondent is not named in her father's will, and therefore under the rule established in Thomas v. Black, supra, the presumption is that she was unintentionally omitted, and while this presumption may be rebutted, it must appear on the face of the will. (5)

There is not a word in the will which indicates that if he had remembered his daughter he would have given her just the one thousand dollars; and when we say by this will he intended to give her one thousand dollars because when he has summed up the total legacies they amount to one thousand dollars more than the amount necessary to satisfy the legacies specifically mentioned, we are simply speculating. There is just as much reason for saying that in adding up he missed the total by one thousand dollars as there is in saying that the one thousand dollars was for the respondent. The appellant's whole case is based on mere conjecture.

RAGLAND, C.—Plaintiff, claiming an undivided one-eighth interest in two hundred and forty acres of land in Jasper County, of which her father, J. N. Bradbury, died seized on the —— day of ——, 1917, sues for partition. Bradbury left surviving him one son and seven daughters as follows: defendant Walter Bradbury, plaintiff Bessie McCoy, Clara Bradbury, Birdie Leaming, Della Bradbury, Daisy Bradbury, Alphah Bradbury and Nina Bradbury. His will was duly admitted to probate. The part of it relevant to this controversy is as follows:

"Second. I wish and desire that my beloved wife, Alice Bradbury, during her natural life, may receive the benefit of my farm in Jasper County, Missouri, and to that end and to the end that the family home may be kept intact, I give and bequeath to my wife, my farm of two hundred and forty acres in Jasper County, Missouri, for and during her natural life, after her death said land to go to my son as hereinafter provided.

"Third. To my son Walter Bradbury, I give, devise and bequeath all of my real estate situated in Jasper County, Missouri, and especially my two hundred and forty (240) acre farm situated in said county, subject to all of the rights of his mother, Alice Bradbury, as hereinafter provided; also subject to the payment of legacies to my beloved daughters, to-wit: Clara Bradbury, the sum of $600; Birdie Leaming, wife of Carl

Leaming, the sum of $700; to my beloved daughter Della Bradbury, the sum of $600; to my beloved daughter Daisy Bradbury, the sum of $600; to my beloved daughter Alphah Bradbury, the sum of $600 and to my beloved daughter Nina Bradbury, the sum of $600. These several sums to be paid to my several daughters as follows: To those of age at the time of my death they are to be paid in cash at the earliest date practical after my decease. Those not of age at the time of my death are to be paid their respective legacies as they each become of age.

"Fourth. In addition to the bequests made in the last preceding paragraph, upon the death of my wife or upon the event of her decease prior to my own, my son Walter Bradbury is to pay as an additional legacy to each of my daughters above named or to their heirs, the sum of four hundred dollars ($400) in cash; and when he shall have paid the several legacies herein charged against the home farm of two hundred and forty (240) acres, and after the termination of my wife's interest by her death, then he is to become the absolute owner of said farm, it being the intention of this will that there shall be charged against said real estate the sum of seven thousand and one hundred dollars ($7,100) as set out in paragraph four (4) and five (5) of this will, which is to be paid to my said daughters as hereinbefore set out, one thousand dollars ($1000) to each of them except Birdie Leaming who is to receive the sum of eleven hundred ($1,100) and after the payment of said sum and the death of my wife, the said two hundred and forty acres of land in Jasper County, Missouri, is to become the property of my son, Walter Bradbury.

"Fifth. I hereby will and bequeath to my beloved wife, Alice Bradbury, all of the personal property upon my farm, which is to be hers to use or dispose of as she may think best after the payment of my debts and funeral expenses as provided for in paragraph one (1) of this will.''

The testator's wife, Alice Bradbury mentioned in the will, predeceased him.    Plaintiff claims that her father died intestate as to her, because she is not named or provided for in his will.    Defendant insists that while she is not expressly named she is provided for therein. On the trial the defendant introduced as a witness the scrivener who prepared the will.    Subject to plaintiff's objection the witness testified as follows:

"I think I can state subject to Judge Gray's objection all I remember about that.    I recollect Mr. Bradbury's coming very definitely because Mr. Bradbury and I had had some very spirited exchanges over the road business.    He entertained certain views and I certain views.    He had come to my office quite frequently previous to that time.    When he come it was a little bit of a surprise and we went into the library and sat down. I remember going in there and discussing the will and he gave me the data.    I don't remember about the specific daughters, I don't remember the names.    I remember he told me about there being only his one son and the daughters and that he wanted the son to have the land. He wanted to make a charge against the land.    He wanted to make a charge against the land to take care of his daughters.    I remember we calculated the amount and put that in.    I have no definite recollection of the names of the individuals at all or the specific part of it in that way.    I remember the will was drawn up and Miss Dean and I acted as witnesses, and I remember about Mr. Bradbury signing it.    I don't remember about the reading of it.    I remember he wore glasses and I had seen him use them before.    That, as near as I can recollect, is the substance of what transpired there at the time I drew the will.    It is too long ago for me to have any definite recollection about any detail."

At the conclusion of the trial the court sustained plaintiff's objection to this testimony and it was stricken out.    Other evidence showed that at the time the will was written plaintiff was a minor living in her father's home, and that no estrangement of any kind had ever

McCoy v. Bradbury.

existed between her and her father. She was not his only minor daughter, however. The finding and judgment were for plaintiff, and defendant appeals.

Appellant insists that the trial court was in error (1) in striking out the testimony of the scrivener, and (2) in not holding that a bequest of $1000 to plaintiff was necessarily implied from the language of the will when read and considered as a whole, in the light of all the facts and circumstances attending its making.

I. A reading of the will makes it very plain that plaintiff is not named individually, nor is there a clause provided for therein which includes her. The first reference to testator's daughters occurs in paragraph "third" in this language: "to my beloved daughters to-wit." The names of six, which do not include that of the plaintiff, immediately follow, with a designation of the precise sum each is to receive. "These several sums," it next recites, "to be paid my several daughters as follows." Paragraph "fourth" provides for an additional legacy of $400 "to each of my daughters above named or to their heirs." The latter part of the paragraph then recites, "It being the intention of this will that there shall be charged against said real estate the sum of seven thousand and one hundred dollars ($7100) as set out in paragraph four (4) and five (5) of this will, which is to be paid to my *said daughters* as hereinbefore set out, one thousand dollars to each of them except Birdie Leaming who is to receive the sum of eleven hundred dollars." All of this language with reference to the daughters of the testator who were provided for in the will is specific and exclusive. This situation appellant would overcome by reading into, or in connection with, the will the declaration made by the testator at the time it was written namely: "He wanted to make a charge against the land to take care of *his daughters.*" And this brings us to appellant's first contention.

It is the general rule that when any doubt or uncertainty arises as to the testator's intention extrinsic

*Extrinsic Evidence: Omission.*

290 Mo.—42

facts are admissible to explain the language of the will, regardless of the nature of the ambiguity, whether it be patent or latent. In every case the court is entitled to be placed in possession of all the information which is available of the circumstances of the estate and family of the testator when he made his will, to the end that the court may be in his situation as nearly as may be, and may interpret and understand the will as he would if he were living. [2 Underhill on Wills, sec. 910; Willard v. Darrah, 168 Mo. 660, 668; Cox v. Jones, 229 Mo. 56, 62.] But such intrinsic evidence is admissible solely for the purpose of ascertaining the testator's intention from the language he has used. It cannot be heard to show that he meant one thing when he said another, or to show an intention not expressed in the will itself, or to aid in making a will which the testator intended to make, but did not in fact make. However clearly an intention not expressed in the will may be proved by extrinsic evidence, the rule of law requiring wills to be in writing stands as an insuperable barrier against carrying the intention thus proved into execution. [28 R. C. L. sec. 243.]

In the will under consideration the testator in plain and unambiguous language gave a specific legacy to each of six daughters whom he named; there is no reference any where in the will, expressly or impliedly, to any other daughter. The oral declaration of intention that appellant would incorporate in the will would operate merely to enlarge its provisions so as to include therein *all* of testator's daughters instead of the *six* named. This under the principles stated in the preceding paragraph is not permissible.

There was no latent ambiguity shown, nor does any doubt or uncertainty arise on the face of the will. There can be no question with respect to the property that is the subject of disposition therein, nor as to the identity of the persons to whom it was given. The testator in clear and unequivocal language devised a life estate in land which is definitely described to his wife, gave to

each of six daughters whom he named a specific legacy, which legacies he expressly charged against the land, and subject to such life estate and legacies he devised the land in fee to his son. Following this plain and explicit disposition there is a recital to the effect that it was the intention of the testator to place a charge of $7100 against the land to be paid to his "said daughters as hereinbefore set out." The sums thereinbefore set out and again repeated, in effect, aggregated only $6100, but the use of "$7100" instead of $6100 did not create an ambiguity. It was a mere inaccuracy. [Riggs v. Myers, 20 Mo. 239.] Upon reading the will one would inevitably conclude that the designation of the charge against the land as $7100 was simply a miscalculation or inadvertence. As such it would have no influence whatever upon the interpretation of the will, that is, the ascertaining of the testator's intention with respect to the disposition of his property. Where the testator, as in this case, employs language that is clear, definite and incapable of any other meaning than that which is obviously conveyed by the words used, there is no reason for resorting to evidence of extrinsic facts in order to ascertain his meaning.

We are of the opinion that the testimony of the scrivener could serve no legitimate purpose in the construction of the will and that the court was not in error in striking it out.

II. Appellant insists that the will provides a bequest of $1000 to plaintiff by implication. If there were any expressions in the will which showed that the testator had seven daughters or other daughters than those expressly named and that he intended a charge of $7100 against the land devised as a provision for all of them, the insistence would no doubt be valid. But a gift by implication will not be inferred from mere silence, or from extrinsic facts; it must be founded on expressions in the will itself. A testamentary intention not found in the will cannot be incorporated

*Bequest by Implication.*

therein by extrinsic evidence and an implication then based on that.

In Crane v. Doty, 1 Ohio St. 279, it is said:

"In order to raise an estate by implication, the two following circumstances must concur: First; an interest or estate in the property less than the whole, must be created expressly by the will, in order that it may appear that the testator had the disposition of the property in his mind. Second; the person to take by implication, must be named or described in connection with the raising of such interest or estate."

The only possible expression in the will on which to hypothecate the implication contended for is the recital that it was the intention of the testator to charge the land with $7100 for the purpose of paying the six specific legacies thereinbefore provided for which amounted to only $6100. That he intended the difference between $7100 and $6100 as a gift to the daughter not named or in any way referred to in the will does not rise to the dignity of an implication; it is pure conjecture. [Pounds v. Dale, 48 Mo. 270, 272; 40 Cyc. 1390.] Although we might reach the conclusion from the extrinsic evidence that the testator intended that $1000 of the amount charged against the land should be paid to his daughter, the plaintiff, still we could not make for him the will he intended to make but did not in fact make. [Calloway v. Calloway, 188 S. W. (Ky.) 410.]

We concur with the learned trial court in holding that the plaintiff was not named or provided for in her father's will within the meaning of Section 544, Revised Statutes 1909, and that, therefore, he died intestate as to her.

It follows that the judgment must be affirmed. It is so ordered. *Small, C.,* concurs; *Brown, C.,* absent.

PER CURIAM:—The foregoing opinion of RAG-LAND, C., is adopted as the opinion of the court. All of the judges concur, except *Woodson, J.,* not sitting.