In the Matter of the ESTATE of Charles Edgar GARRISON, Deceased, Charles Otis Garrison, Executor.

Marilyn Rae GARRISON, Novada Emma Garrison and Charles Otis Garrison, Respondents,

v.

Gladys Garrison HIGHT, Exceptor and Appellant.

No. 49954.

Supreme Court of Missouri, Division No. 2.

Jan. 13, 1964.

Edwin W. Wilson, Bakersfield, Cal., Jones & Jones, Kennett, for appellant, Gladys Garrison Hight.

McHaney, Billings & Welman, Kennett, for respondents, Charles Otis Garrison, Executor, Marilyn Rae Garrison, Noveda Emma Garrison and Charles Otis Garrison.

BARRETT, Commissioner.

Under the will of Charles E. Garrison the probate court and on appeal the circuit court have decreed, subject to a life estate in the testator's wife, that "the successor to the descendible interest" in 40 acres of land in Dunklin County is his daughter Marilyn Rae Garrison the residuary beneficiary. Gladys Garrison Hight, a daughter by a first marriage, has appealed and contends that these judgments are contrary to the manifest intention of the testator and that, subject to her stepmother's life estate, she should be decreed the owner of this particular forty-acre tract of land.

In article five the testator devised three specifically described tracts of land to his son Charles Otis Garrison and in article six a specifically described tract to his daughter Marilyn Rae Garrison and, as indicated, by article eight, she was also designated his residuary beneficiary. In article two there was this provision relating to the appellant: "I give and bequeath unto my daughter, Gladys Garrison, the sum of One Dollar ($1.00). This bequest is no indication of my love and affection for my daughter, Gladys Garrison, but inasmuch as she will receive at the time of my death 80 acres of land under the Last Will and Testament of my father, Robert Garrison, I have, therefore, reduced her gifts under this will." There was no other mention or provision for Gladys in her father's will and upon his death she did not receive *80 acres* of land under his father's will. In referring to his father's will the testator had in mind these provisions from that instrument: "Fourth: To my son, James P. Garrison, I give, devise and bequeath *twenty acres* of land, it being *the extreme west twenty acres of*

*my home place* in Dunklin County, Missouri; this land is given to him for his use and benefit so long as he shall live, and *at his death to be given to my granddaughter, Gladys Garrison,* a child of Charles E. Garrison; * * *. Fifth: To my son, Charles E. Garrison, I give, devise and bequeath *the east forty acres of lands in my home place* in Dunklin County, Missouri, the same to be his absolute subject only to the life interest of my wife, Sallie Garrison; and in addition thereto I give to my son Charles E. Garrison the east half of the west half of my farm, the same to be used by him his life time, and at his death *the east twenty acres* above described *to be given absolute* to my granddaughter, Gladys Garrison, the daughter of my son Charles E. Garrison; * * *." (Emphasis supplied.)

Since the testator, Charles E. Garrison, did not specifically devise "the east forty acres of land," described in his father's will as part of the "home place," the probate and circuit courts have decreed that it was disposed of and passed to Marilyn under article eight, the residuary clause. It is said that this construction of the will amounts to a disinheritance of the appellant, "a beloved daughter and one of his legal heirs," and is contrary to the presumption against disinheriting heirs. It is urged that the courts' construction places undue emphasis on the residuary clause and ignores the paramount intent of the testator and the terms of the will as a whole. V.A.M.S. Sec. 474.430; Grace v. Perry, 197 Mo. 550, 95 S.W. 875. In this connection it is said that because the testator was "mistaken as to his title to the forty acres of land here in question" the courts have erroneously held that title passed under the residuary clause. This error, it is said, is "that a mistake of fact by the testator under the law does not alter the effect of his will as to his intent and meaning." But the crux of her appeal is the appellant's ultimate claim that the decrees are erroneous "in that the clear intent and meaning of Charles Edgar Garrison (as expressed in article

two) was that appellant would receive *eighty acres of land, including the forty * * * in controversy here,* at his death *under the will of his father."* It is urged therefore that the testator's intent and meaning should be carried out *"even to the extent of implying a* gift or *devise"* so long as that interpretation is based on and found in expressions under the will. Or finally, it is said, "(i)f the formal words necessary to vest title to the lands * * * in Appellant were omitted from the will * * * under circumstances indicating mistake as to the title, then *it was error for the court not to supply such words by* implication" and thus carry out the testator's obvious intention. (Italics supplied throughout this opinion for emphasis.)

■ It is not necessary to consider these arguments in detail, in the absence of plain language to the contrary there is a presumption against the disinheritance of heirs (57 Am.Jur. (Wills) Sec. 1160, p. 757), and if possible a will should be so construed as to dispose of the whole estate in preference to a construction resulting in partial intestacy. Meiners v. Meiners, 179 Mo. 614, 78 S.W. 795; Smoot v. Harbur, 357 Mo. 511, 209 S.W.2d 249. But in this will Gladys is expressly excluded with the consequence that she is provided for (Guitar v. Gordon, 17 Mo. 408), and article eight in express terms in a general clause bequeaths and devises the remainder of the testator's estate, thereby disposing of all of his property including the forty acres. Shackelford v. Fifer, (Mo.) 269 S.W.2d 30. The forty acres were a part of her grandfather's "home place," but her father's will refers to "80 acres" and now, because the forty acres were once a part of the home place, it is urged that there was an express intention in the will to devise this particular tract of land to the appellant Gladys.

But, as indicated, the appellant's basic reliance is upon a devise "by necessary implication from his will taken as a whole." 4 Page, Wills, Sec. 30.18, p. 119. The practical and factual difficulty with the appellant's contention is that, whatever her father may have intended, he made no attempt to devise this or any other property to her. And there was no attempt to incorporate the provisions of her grandfather's will (if it were otherwise sufficient) or any other document by reference. Annotation, 110 A.L.R. 261, 268. It may well be that precedents are often not as significant in will cases as in other fields (4 Page, Wills, Sec. 30.5, p. 22); nevertheless, Clamorgan v. Lane, (1845) 9 Mo. 446, 456, has several points of similarity to the facts in this case and in many respects the court's reasoning is still of commanding force. There the provision was "Wishing and intending as far as in me lies, to place my several children on equal footing in a pecuniary point of view, * * * and forasmuch as my second son and child, Henry, has been sufficiently provided for and established in the world by the will of his uncle Cyprian Martial Clamorgan, deceased, and placed in a better situation in a pecuniary point of view than I remain able to place the balance of my children, therefore I will * * * that said Henry shall receive no portion nor any part of any real estate * * *." Uncle Cyprian had not, as the testator stated, "provided" for Henry and it was contended that the quoted provision "either confirms the will of Cyprian, or by implication adopts its provisions" to the end that Henry shared with his brother and sister in his mother's real estate. While recognizing in appropriate circumstances a devise by implication, the court said, "If Apauline Clamorgan believed that her son, Henry, already had a title, independently of any act of hers, and that belief is to be fairly inferred from the language of this recital, how can it be maintained that she intended to exercise any power of disposition in his favor? Though she may be influenced in the disposition of her property, by this supposition, yet it does not follow that she intends to give to Henry that benefit, to which she takes it for granted, he is already entitled. How are we to come to the conclusion, that in the event of the failure of Henry's title, under the will of Cyprian, she designed and

interided by her will to give him that estate? * * * In the principle case, Apauline Clamorgan, reciting that her son Henry had been provided for by the will of his uncle Cyprian, devised her real estate, or the principle part of it, to her other children. * * * There is a class of cases in which the testator refers to a disposition as made in his will (which in fact he has not made) and the courts have supplied such omission. The ground upon which such implications are admitted is obvious enough. Such recitals manifest an unequivocal intention to make the disposition referred to."

■ In addition to the appositeness of that case, there is no ambiguity in the will involved here, its provisions unambiguously dispose of all of the testator's property and leave no room for the construction of a "gift by implication" which "must be founded on expressions in the will itself." McCoy v. Bradbury, 290 Mo. 650, 235 S.W. 1047. There is here only "an erroneous recital in a will that ownership of or title to property actually belonging to the testator is in a third person" and that mere recital "cannot 'serve to operate as a devise or bequest of such property by implication." 57 Am.Jur. Sec. 1193, p. 784. In short, the circumstances of this case fall within what for the lack of a more precisely descriptive term may be designated as a general rule that "a recital in a will of a conveyance of land which was not in fact made, or which proved to be ineffectual * * * will not operate as a devise, but (that) the rights of persons interested must be determined by resort to the instrument referred to." 110 A.L.R. 1. c. 264.

Necessarily, for the reasons indicated, the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.